# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **SWINOMISH INDIAN TRIBAL COMMUNITY**<br>11404 Moorage Way<br>La Conner, WA 98257 | ) ) ) ) ) | |
| PLAINTIFF, | ) ) | |
| v. | ) ) | Case No. 1:18-cv-1156 |
| **ALEX M. AZAR**, in his official capacity<br>as Secretary,<br>U.S. Department of Health & Human Services<br>200 Independence Ave, S.W.<br>Washington, DC 20201 | ) ) ) ) ) ) | |
| **RADM MICHAEL D. WEAHKEE**, in his<br>official capacity as Acting Director,<br>Indian Health Service<br>5600 Fishers Lane<br>Rockville, MD 20857 | ) ) ) ) ) ) | **COMPLAINT** |
| **UNITED STATES OF AMERICA** | ) ) | |
| DEFENDANTS. | ) ) | |

Served:   The Honorable Jeff Sessions
          Attorney General of the United States
          Department of Justice
          950 Pennsylvania Avenue, NW
          Washington, D.C.   20530-0001

          The Honorable Jessie K. Liu
          United States Attorney for the District of Columbia
          Judiciary Center Building
          555 Fourth Street, NW
          Washington, D.C.   20530

**COMPLAINT**

Plaintiff Swinomish Indian Tribal Community, for its cause of action against the Defendants named above, alleges as follows:

**INTRODUCTION AND SUMMARY**

1.       This is a suit against the United States for breach of contract and statute by the Indian Health Service ("IHS"), an agency in the U.S. Department of Health and Human Services ("HHS").  Plaintiff, Swinomish Indian Tribal Community ("Tribe"), seeks money damages under the Contract Disputes Act, 41 U.S.C. § 7101 *et seq.*, and declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, and 25 U.S.C. § 5331(a), based on the Secretary's violation of the Tribe's contractual and statutory right to the payment of full funding of contract support costs ("CSC") for a Compact and Funding Agreement entered into under the Indian Self-Determination and Education Assistance Act ("ISDEAA"), Pub. L. No. 93-638, as amended, 25 U.S.C. § 5301 *et seq.*

2.       The Supreme Court has held that the United States' failure to pay the full CSC associated with its ISDEAA agreements constitutes a violation of law and breach of contract. *Salazar v. Ramah Navajo Chapter*, 567 U.S. 182, 185 (2012) ("[W]e hold that the Government must pay each tribe's contract support costs in full."); *Cherokee Nation v. Leavitt*, 543 U.S. 631, 634 (2005) ("The [ISDEAA] specifies that the Government must pay a tribe's costs, including administrative expenses.").

3.       Defendants breached the Tribe's agreements and violated the ISDEAA by failing to pay the full CSC owed to the Tribe under the statute and the Tribe's Compact and Funding Agreement for Calendar Year (CY) 2010.

4.      Defendants paid only a portion of the CSC owed under the Tribe's contracts, due to their misinterpretation of the ISDEAA.  Specifically, IHS failed to pay CSC associated with the portion of the Tribe's health care program funded with third-party revenues—payments from Medicare, Medicaid, private insurers, and others.

5.      This action challenges IHS's denial of the Tribe's Contract Disputes Act claims and IHS's assertion of a counterclaim for CY 2010, and seeks damages and other relief.

## JURISDICTION AND VENUE

6.      This controversy arises under agreements between the United States and the Tribe for operation of Indian health programs carried out pursuant to the ISDEAA.  This Court has subject matter jurisdiction under the Contract Disputes Act, 41 U.S.C. § 7101 *et seq*., and the ISDEAA.  *See* 25 U.S.C. § 5331(a) (providing original jurisdiction to United States district courts, concurrent with the Court of Federal Claims, over civil actions for money damages arising under ISDEAA contracts).

7.      On December 20, 2016, the Tribe requested an IHS contracting officer's decision on claims for underpaid CSC for calendar year 2010.  On May 22, 2017, IHS issued a decision denying the Tribe's claims and asserting a counterclaim.

8.      This Court has jurisdiction to review the IHS's decisions on the 2010 claims under the Contract Disputes Act and Section 110 of the ISDEAA.  41 U.S.C. § 7104(b); 25 U.S.C. § 5331(a); 25 U.S.C. § 5331(d).

9.      Venue is proper because Defendant Azar, in his official capacity as Secretary of HHS, is located in the District of Columbia.

## PARTIES

10.     Plaintiff Swinomish Indian Tribal Community is a federally recognized tribe organized pursuant to Section 16 of the Indian Reorganization Act of 1934, 25 U.S.C. § 5123, which occupies the Swinomish Indian Reservation established by the Treaty of Point Elliott, 12 Stat. 927 (1855), located on Fidalgo Island in Skagit County, Washington, and is an "Indian tribe" eligible to contract and compact with IHS under the ISDEAA.  *See* 25 U.S.C. § 5304(e). The Tribe carries out a range of health care programs, functions, services and activities at its medical and dental clinics on the Swinomish Reservation.  Since 1997, the Tribe has compacted with the IHS under the ISDEAA to carry out these functions.

11.     Defendant Alex M. Azar, the Secretary of HHS ("Secretary"), has overall responsibility for carrying out all the functions, responsibilities, authorities and duties of the U.S. Department of Health and Human Services, including oversight of the IHS, an agency within the Department.  He is sued in his official capacity.

12.     Defendant Rear Admiral Michael D. Weahkee is the Acting Director of the IHS, the agency charged by law with the responsibility for implementing the ISDEAA and other health laws benefiting American Indians and Alaska Natives, on behalf of the United States. 25 U.S.C. § 1661(c)(3).  He is sued in his official capacity.

13.     Defendant United States is a party to the Tribe's ISDEAA agreements.  *See* Compact of Self-Governance Between the Swinomish Indian Tribal Community and the United States of America ("Compact"); Funding Agreement Between the Swinomish Indian Tribal Community and the United States of America for Calendar Year 2010-2014 ("Funding Agreement").

## STATUTORY BACKGROUND:  THE ISDEAA

14.     During CY 2010, the Tribe provided health care services to eligible Indians and other eligible beneficiaries pursuant to its Compact and Funding Agreement authorized by Title V of the ISDEAA, 25 U.S.C. § 5381 *et seq*.

15.     The ISDEAA authorizes the Tribe, other tribes, and tribal organizations to assume responsibility to provide programs, functions, services and activities ("PFSAs") that the Secretary would otherwise be obligated to provide.  In return, the Secretary must provide the Tribe two types of funding under Section 106(a) of the ISDEAA:  (1) "program" funds, the amount the Secretary would have provided for the PFSAs had the IHS retained responsibility for them, *see* 25 U.S.C. § 5325(a)(1), sometimes called the "Secretarial amount" or the "106(a)(1) amount"; and (2) "contract support costs," the reasonable administrative and overhead costs associated with carrying out the PFSAs, *see* 25 U.S.C. § 5325(a)(2) & (3); 25 U.S.C. § 5396(a) (mandatory application of section 5325(a) through (k) to Title V agreements).

16.     There are three types of CSC:  (1) pre-award and start-up costs, which are one-time costs to plan, prepare for and assume operation of new or expanded PFSAs, *see* 25 U.S.C. § 5325(a)(5) & (6); (2) indirect CSC, which are costs incurred for a common or joint purpose benefiting more than one PFSA, such as administrative and overhead costs, *see* 25 U.S.C. § 5325(a)(2); and (3) direct CSC, which are expenses directly attributable to a certain PFSA but not captured in either the indirect cost pool or the 106(a)(1) amount, such as workers' compensation insurance or other expenses the Secretary would not have incurred because, for example, the Government is self-insured, *see* 25 U.S.C. § 5325(a)(3)(A).  This action involves indirect CSC and direct CSC.

17.     The ISDEAA requires that, upon approval of the contract, "the Secretary <u>shall add</u> <u>to the contract the full amount of funds</u> to which the contractor is entitled [under section 106(a) of the ISDEAA]," including CSC.  25 U.S.C. § 5325(g) (emphasis added); *see also Cherokee Nation*, 543 U.S. at 634 ("The [ISDEAA] specifies that the Government must pay a tribe's costs, including administrative expenses.").

## GENERAL ALLEGATIONS

***Program Income***

18.     When IHS provides direct services to eligible beneficiaries, the PFSAs are funded not only by funds appropriated by Congress, but by third-party revenues billed to and collected from Medicare, Medicaid, the Children's Health Insurance Program, private insurers, and others. *See generally* 42 U.S.C. §§ 1395 *et seq*., 1396 *et seq*., 1397aa *et seq.*  Each year in its budget request to Congress, IHS estimates how much third-party revenue will be collected and available to spend on services, based on past collections.  *See, e.g.*, Dep't of Health & Human Servs., *Indian Health Service FY 2018 Justification of Estimates for Appropriations Committees*, at CJ-143 (reporting that in FY 2016, IHS collected $1.194 billion from third-party insurers).  "Public and private collections represent a significant portion of the IHS and Tribal health care delivery budgets."  *Id*.

19.     By the same token, the Tribe, when carrying out PFSAs under its Compact and Funding Agreement, is required by law and contract to collect third-party revenues and use them to provide further services within the scope of the agreements with IHS.  Title V of the ISDEAA mandates as follows:

> (j) PROGRAM INCOME.--All Medicare, Medicaid, or other program income earned by an Indian tribe shall be treated as supplemental funding to that negotiated in the funding agreement.  The Indian tribe may retain all such income and expend such funds in the current year or in future years except to the extent that the

Indian Health Care Improvement Act (25 U.S.C. 1601 et seq.) provides otherwise for Medicare and Medicaid receipts. Such funds shall not result in any offset or reduction in the amount of funds the Indian tribe is authorized to receive under its funding agreement in the year the program income is received or for any subsequent fiscal year.

25 U.S.C. § 5388(j).  Thus, by law, these third-party revenue funds are part of the federal program carried out by the Tribe under its ISDEAA agreements.  *See Navajo Health Foundation—Sage Memorial Hospital, Inc. v. Burwell*, 263 F. Supp. 3d 1083, 1166-67 (D.N.M. 2016); *Pyramid Lake Paiute Tribe v. Burwell*, 70 F. Supp. 3d 534, 544 (D.D.C. 2014).

20.     Similarly, the Tribe's Compact provides as follows:

All Medicare, Medicaid and other program income earned by the Tribe shall be treated as additional supplemental funding to that negotiated in the FA. The Tribe may retain all such income and expend such funds in the current year or in future years except to the extent that the Indian Health Care Improvement Act (25 U.S.C. 1601 et seq.) provides otherwise for Medicare and Medicaid receipts.  Such funds shall not result in any offset or reduction in the amount of funds the Tribe is authorized to receive under its FA in the year the program income is received or for any subsequent fiscal year.

Compact of Self-Governance Between the Swinomish Indian Community and the United States of America, Art. III, § 5.

21.     The Tribe's 2010 Funding Agreement with IHS obligates the Tribe to engage in third-party billing.  Funding Agreement Between the Swinomish Indian Tribal Community and the United States of America for Calendar Year 2010-2014, § 2.B.ix ("Obligations of the Tribe" include "maintain[ing] a system of third party payment collection for services provided to patients of the Swinomish Tribal Health Program").

22.     Any third-party revenues collected by the Tribe are designated by statute and IHS regulations as "program income" that must be, and is, expended on PFSAs included in the Tribe's Funding Agreement with IHS.  25 U.S.C. § 5325(m) (program income "shall be used by

the tribal organization to further the general purposes of the contract; and . . . shall not be a basis for reducing the amount of funds otherwise obligated to the contract"); 42 C.F.R. § 137.110 ("All Medicare, Medicaid, or other program income earned by a Self-Governance Tribe shall be treated as supplemental funding to that negotiated in the funding agreement.").

23.     As documented in the Tribe's CY 2010 audit, the Tribe expended $664,151 in third-party revenues in CY 2010 on health care services provided under the IHS Compact and Funding Agreement.  IHS paid no CSC in support of those funds, giving rise to the damages described next.

**Calculation of Contract Support Costs**

24.     As noted above, the ISDEAA requires IHS to pay full CSC.  *Ramah*, 567 U.S. at 185; *Cherokee Nation*, 543 U.S. at 634.  For the Tribe, as for most tribes, the full amount of indirect CSC is determined by multiplying a negotiated indirect cost rate by the amount of the direct cost base.  The Tribe's 2010 indirect cost rate agreement with the Department of the Interior's National Business Center,[1] which applies government-wide, calls for an indirect cost rate of 31.91% on a direct cost base comprised of "Total direct costs, less capital expenditures and passthrough funds."

25.     IHS accepts the Tribe's rate, as it must.  The controversy is over the amount of the direct cost base.  Specifically, the issue is whether third-party revenues expended to provide services within the scope of the Tribe's ISDEAA agreements are part of the direct cost base and therefore generate CSC requirements.  IHS argues, in its decision denying the Tribe's claims, that only the Secretarial amount generates CSC, and the Secretarial amount is limited to funding for PFSAs transferred under the ISDEAA agreement.  Decision Letter at 6.  But the ISDEAA

---

[1] Now known as the Interior Business Center.

says that the Secretarial amount includes all resources the Secretary "would otherwise have provided" to carry out the PFSAs himself.  25 U.S.C. § 5325(a)(1).  As noted above, the Secretary uses third-party revenues to carry out PFSAs when he directly provides services to beneficiaries, so these resources are part of the Secretarial amount.  *Pyramid Lake Paiute Tribe*, 70 F. Supp. 3d at 544 ("[T]he applicable funding level for a contract proposal under [the ISDEAA] is determined based on what the Secretary would otherwise have spent, not on the source of the funds the Secretary uses."); *Navajo Health Foundation—Sage Memorial Hospital, Inc. v. Burwell*, 263 F. Supp. 3d at 1166-67.

26.     The Tribe's 2010 direct cost base therefore included $664,151 in third-party revenues expended on health care PFSAs within the scope of its Funding Agreement. Subtracting from that figure a proportionate share of passthroughs and exclusions of $32,705, also derived from the audit, leaves a direct cost base of $631,446 associated with the third-party-funded portion of the health program.  Applying the Tribe's negotiated indirect cost rate of 31.91% yields a claim for unpaid indirect CSC in the amount of $201,494.

27.     IHS paid $153,374 for direct CSC out of a total IHS award of $3,028,213, a ratio of 5.065%.  Applying this ratio to the total third-party expenditures of $664,151 yields a claim for $33,639 in unpaid direct CSC.

28.     Finally, direct CSC is itself part of the direct cost base and generates indirect cost requirements.  Applying the Tribe's indirect cost rate of 31.91% to the direct CSC shortfall of $33,639 produces a claim for $10,734.  The total of these three claims is **$245,867**.

29.     Because the Tribe was underpaid by $245,867—not overpaid by $78,133, as IHS claims—the Tribe disputes IHS's counterclaim.  To the extent the evidence shows any

overpayment of CSC on IHS-appropriated funds, this Court may offset that amount against the damages detailed above.

***Procedural History of the Claims***

30.     In a letter dated December 20, 2016, the Tribe requested a contracting officer's decision on the three claims for unpaid 2010 CSC described above.

31.     IHS denied the Tribe's claims in a letter dated May 22, 2017 and received by the Tribe on June 1, 2017.  In the denial letter, IHS argues that the Secretarial amount generating CSC needs is limited to appropriated funds transferred in the Funding Agreement and may not include third-party collections.  IHS concludes that it overpaid the Tribe $78,133 for indirect CSC on the appropriated IHS funds, and asserts a counterclaim for that amount.

32.     The Tribe filed this action within twelve months of receipt of the IHS decision, as authorized by the Contract Disputes Act.  41 U.S.C. § 7104(b)(3).  The Tribe challenges both the denial of its claims and IHS's counterclaim.

***Rule of Construction***

33.     The ISDEAA incorporates its own rule of interpretation:  "Each provision of [Title V] and each provision of a compact or funding agreement shall be liberally construed for the benefit of the Indian tribe participating in self-governance and any ambiguity shall be resolved in favor of the Indian tribe."  25 U.S.C. § 5392(f).  Applying a similar interpretive rule from Title I, the Supreme Court has said that the government "must demonstrate that its reading [of the ISDEAA] is clearly required by the statutory language."  *Salazar v. Ramah Navajo Chapter*, 567 U.S. at 194.

### COUNT I – Violation of the ISDEAA

34.     All prior allegations are adopted by reference as if fully set forth here.

35.     The ISDEAA requires IHS to pay the Tribe's contract support costs in full.
25 U.S.C. § 5325(a) & (g); *Salazar v. Ramah Navajo Chapter*, 567 U.S. at 185.

36.     IHS failed to pay direct and indirect CSC on that portion of the Secretarial amount
composed of third-party revenues expended to provide services under the Funding Agreement.

37.     In doing so, IHS violated the ISDEAA.

38.     As a result of IHS's violation of the ISDEAA, the Tribe sustained damages
totaling $245,867.

39.     Defendants are liable to the Tribe for its damages of $245,867 under Section
110(a), 25 U.S.C. § 5331(a).

### COUNT II – Breach of Contract

40.     All prior allegations are adopted by reference as if fully set forth here.

41.     The Tribe's Compact and Funding Agreement incorporate the statutory duty to
fully fund CSC.  *See, e.g.*, FY 2010-2014 AFA § 6 (referencing Sections 508(c) and 106(a) of
the ISDEAA, 25 U.S.C. § 5388(c) and § 5325(a), respectively).  This duty was affirmed by the
Supreme Court in *Ramah* and *Cherokee*, *supra*.

42.     By failing to pay direct and indirect CSC on the third-party revenue-funded
portion of the Secretarial amount, the IHS breached its contractual agreements with the Tribe.

43.     As a result of IHS's breach of its contractual agreements, the Tribe sustained
damages totaling $245,867.

44.     Defendants are liable to the Tribe for damages of $245,867.

45.     The Tribe therefore seeks an award of damages under the ISDEAA, 25 U.S.C. §
5331(a) & (d), and the Contract Disputes Act, 41 U.S.C. § 7101 *et seq*.

**COUNT III – Declaratory Relief**

46.     All prior allegations are adopted by reference as if fully set forth here.

47.     The Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes this Court to grant declaratory relief.  *See also* 25 U.S.C. § 5331(a).

48.     Section 106(a)(2) of the ISDEAA commands that CSC "shall be added" to the Secretarial amount that would otherwise be used by IHS to fund health care services.  25 U.S.C. § 5325(a)(2).

49.     When providing health care services directly to Indian and other beneficiaries, the Secretary uses funds appropriated by Congress, but also third-party revenues from Medicare, Medicaid, private insurance, and other sources.  In carrying out its Compact and Funding Agreement, the Tribe is required by law and contract to do the same.

50.     Third-party revenues expended to provide services within the scope of the Tribe's Compact and Funding Agreement are therefore part of the Secretarial amount under section 106(a)(2), yet IHS refuses to pay CSC on that portion of the Tribe's funding.

51.     Therefore the Tribe is entitled to an Order declaring that the ISDEAA requires IHS to pay the full CSC associated with the Secretarial amount, including the third-party revenue-funded portion of that amount.

**PRAYER FOR RELIEF**

46.     The Tribe respectfully requests the Court grant relief as follows:

    A.  Award the Tribe $245,867 in damages for unpaid CSC, indirect and direct;

    B.  Award such other damages as may be proven in this action;

C.  Declare that IHS must pay CSC on the entire Secretarial amount, including third-party revenues expended on health care services within the scope of the Tribe's Compact and Funding Agreement;

D.  Order the payment of interest on these claims pursuant to the Contract Disputes Act, 41 U.S.C. § 7109, and the Prompt Payment Act, 31 U.S.C. § 3901;

E.  Award the Tribe its attorney fees and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 and 25 U.S.C. § 5331(c), and other applicable law; and

F.  Grant the Tribe such other and further relief as the Court deems appropriate.

Respectfully Submitted,


  /s/ Patrick M. Sullivan
Patrick M. Sullivan (DC Bar No. 1018119)
Hobbs, Straus, Dean & Walker, LLP
516 SE Morrison Street, Suite 1200
Portland, OR 97214
503-242-1745 (Tel.)
503-242-1072 (Fax)
psullivan@hobbsstraus.com

Geoffrey D. Strommer, *pro hac vice pending*
Stephen D. Osborne, *pro hac vice pending*
Hobbs, Straus, Dean & Walker, LLP
516 SE Morrison Street, Suite 1200
Portland, OR 97214
503-242-1745 (Tel.)
503-242-1072 (Fax)
gstrommer@hobbsstraus.com
sosborne@hobbsstraus.com

Stephen T. LeCuyer, *pro hac vice pending*
Office of Tribal Attorney
Swinomish Indian Tribal Community
11404 Moorage Way
La Conner, WA 98257
(360) 466-1058 (Tel.)
(360) 466-5309 (Fax)
slecuyer@swinomish.nsn.us

Attorneys for the Swinomish Indian Tribal Community.

DATED:  May 17, 2018.